No. 13,389.

IN RE MYERS *v.* COLORADO PULP AND PAPER COMPANY.

FIDELITY AND CASUALTY COMPANY OF NEW YORK *v.* PEOPLE FOR THE USE OF GREEN, RECEIVER.

(30 P. [2d] 323)

Decided February 26, 1934.

Mr. FRED W. VARNEY, for plaintiff in error.

Messrs. McCOMB & GREEN, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE Fidelity and Casualty Company of New York, a corporation, surety on the bond of George W. Beck, receiver of the Colorado Pulp and Paper Company, a corporation, prosecutes error to review a judgment in the sum of $2,500 and interest. The action was brought and judgment obtained against the surety in the name of the people for the use of Milton D. Green, who was appointed by the district court as special receiver to collect on the above bond. We shall refer to the people as plaintiff, to the surety company as the defendant, or surety company, and to the Colorado Pulp and Paper Company as the pulp company. The matter is now before us on defendant's application for supersedeas.

As will hereinafter more fully appear, Beck, under the authority of the district court of Adams county, performed the usual duties of a receiver, and in addition thereto, under a later order of the same court, he was made general manager of the pulp company, operating as a going concern. Beck acted concurrently in the twofold capacity of receiver and general manager for a period of about two and one-half years during the life of the pulp company receivership. The judgment obtained by plaintiff was for a loss occasioned in connec-

tion with Beck's incumbency of the office of general manager, and defendant claims that this was not under the coverage of Beck's official bond as receiver.

The following court orders and acts done thereunder are pertinent: May 16, 1927, the district court of Adams county appointed Beck receiver of the pulp company, with power to take possession and control under the order of the court until the final judgment and decree. The court fixed the receiver's bond in the sum of $50,000. May 17th, Beck filed his oath and bond as receiver in the above sum, with defendant as surety which was duly approved. May 21, five days after the bond was executed and filed, the court made another order continuing the business of the pulp company as a going concern and appointing Beck general manager to conduct its operations. This order reads in part as follows: "Whereas, said Receiver [Beck] has since duly qualified and it is now advisable to define his powers and authority and to amplify said order of May 16th, 1927, * * * it is now Ordered, Adjudged and Decreed by the Court * * * that Receiver be and he is hereby fully authorized and directed to * * * manage and continue the operation of the mill, plant and business of defendant, The Colorado Pulp and Paper Company, from time to time in such manner and to such extent as may be for the best interests of said Company and its creditors and stockholders; * * *." June 9, 1927, over the objections of interested parties, the above order was further amplified and confirmed by instructions to the receiver to allow the latter to conduct the business as a going concern. The court indicated its purpose in making the order; it believed that the condition of the manufacturing plant was such that an immediate cessation of its business would destroy its good will and result in irreparable loss and deterioration. Among other advantages then hoped for as stated by the court, was "the added opportunity of producing a profit out of the busi-

ness itself." The receiver was thereupon ordered to operate said corporation in the usual business way."

July 9, 1927, the court appointed Beck general manager of the pulp company, fixed his compensation for such services at the rate of $500 per month, and ordered it to be charged to the "operating account." He served as general manager until about December, 1929, during which time the plant was enlarged and extended from the proceeds of receivership certificates, and the business of the pulp and paper mill was carried on as a going concern in a competitive market, presumably in "the usual business way." The salary paid Beck as general manager, with the approval of the district court of Adams county, amounted to a total of $12,500. Disaster overtook his efforts as receiver or general manager, and dissatisfied creditors brought numerous suits. *Rossi v. Colo. Pulp and Paper Co.*, 88 Colo. 461, 299 Pac. 19; *Sparling Coal Co. v. Colo. Pulp and Paper Co.*, 88 Colo. 523, 299 Pac. 41; *Myers v. Beck, Receiver*, 88 Colo. 457, 299 Pac. 50; *Myers v. Rude*, 88 Colo. 459, 299 Pac. 50.

We disapproved of the allowance of $12,500 to Beck as general manager, and ordered it to be refunded. *Sparling Coal Co. v. Pulp Company, supra*, at page 533 of the opinion. We did not disturb an allowance of $5,500 paid him as receiver. We directed all further proceedings to be conducted before the presiding judge of the district court of the City and County of Denver, which was done. In partial compliance with our order, Beck personally refunded $10,000 of his salary as general manager, and in default of his payment of the amount remaining, $2,500, this action was brought against the surety company.

The receivership bond in the sum of $50,000 is conditioned as follows: "Now Therefore, the condition of this obligation is such that if the above bonded Geo. W. Beck shall faithfully discharge the duties of his office as such Receiver and shall well and truly pay over all moneys

and account for all property which shall come into his hands as such Receiver, as the court or Judge thereof may direct, and shall abide by and perform all things which in said order of appointment he is directed to do or perform, or which shall hereafter by the Court be commanded to be performed, then this obligation to be null and void; otherwise to be and remain in full force and effect.''

█ It is not our purpose to revive the discussion contained in any of the foregoing cases. They are mentioned only by way of explanation of facts leading up to the present suit. The only question before us now is whether the defendant surety company is liable for the remaining amount of $2,500 of Beck's salary as general manager which he did not refund. This can be answered without difficulty by distinguishing between his office as receiver and his other position as general manager.

*After* the court had appointed a receiver and ordered him to give bond in *that capacity, after* he had taken his oath of office, and *after* the surety company signed the bond for the faithful performance of the duties of the *receiver*, the court, for reasons which it deemed sufficient, created a *new* office, that of general manager, but no bond in the latter capacity was ordered by the court or given by Beck; it was not even mentioned in the contract of suretyship.

It is conceivable that some of the ordinary duties of a receiver and those of a general manager may overlap, and a receiver's general supervisory management in the ordinary sense, subject to the orders of the court, may be regarded as incidental to any receivership. This might easily occur whether the business of the corporation under the administration of the court be carried on temporarily as a going concern or not. It is sometimes necessary for a court of equity to do this temporarily. *International Trust Co. v. United Coal Co.*, 27 Colo. 246, 266, 60 Pac. 621. The possibility of the court adopting

such a course is an incidental hazard which the surety assumes when it signs a receivership bond, and we do not base our conclusion on the fact that the business was conducted as a going concern. We are dealing here with an unique situation as disclosed by the record.

It does not appear anywhere in the record that the words "receiver" and "general manager" are used synonymously either in name or fact. If it had been so intended, the appointment of a general manager would have been superfluous. They were recognized by the court as well as by business custom to be separate and distinct. The duties, emoluments and responsibilities were different; they were so far apart that Beck's compensation as general manager was charged on separate pages of the receivership books known as the "operating account." As far as the surety company is concerned, the effect is the same as if the two offices had been held by different persons. We did not make any order for Beck to refund any part of his compensation as receiver, and whatever his personal liability may have been, he was bonded in the capacity of receiver only.

The learned trial court may have interpreted our general mention of the surety bond in the Sparling case, supra, as indicating our belief that the surety company was liable in the premises. It is possible that the trial court in rendering judgment subordinated its own views to what it mistakenly believed were ours, but the surety company was not a party in the former case, and this is the first time that the terms of the receivership bond have been called to our attention. The liability of the surety is measured by its contract, and it has no responsibility for Beck's salary as general manager.

The judgment is reversed and the cause remanded with directions to dismiss the action.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD concur.